IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| O'NEAL STEEL, INC., et al.,   ]<br>      ]<br>  Plaintiffs,   ]<br>      ]<br>v.      ]<br>      ]<br>WORLDWIDE STEEL UNLIMITED,   ]<br>INC., et al.,   ]<br>      ]<br>  Defendants.   ] | Case No. 2:11-cv-00137-KOB |

### MEMORANDUM OPINION

This matter comes before the court on Defendant David Chatkin's "Motion to Dismiss, or the alternative, for a More Definite Statement" (doc. 60) and Defendants Ryan Chatkin and Von Argyle's "Motion to Dismiss and Motion for More Definite Statement." (Doc. 63). IN this RICO action, Plaintiffs allege that the Defendants fraudulently represented the quality of the steel they sold to the Plaintiffs and induced the Plaintiffs to purchase inferior, untested steel at inflated prices. The three individual Defendants who have filed motions to dismiss argue that three of the claims against them should be dismissed and that the Plaintiffs need to provide a more definite statement of their RICO claims against them. For the following reasons, the court will GRANT IN PART and DENY IN PART the motions to dismiss.

I.   STATEMENT OF FACTS

A.   Factual History

On a motion to dismiss, "a court must accept as true all of the allegations contained in a complaint." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Amended Complaint in this case is

eighty-three pages in length, and thus for purposes of the motions to dismiss, the court will only outline the pertinent incident that gave rise to this lawsuit and the specific allegations on which the court bases this opinion. Plaintiffs O'Neal Steel, Inc. and Leeco Steel, LLC allege that the individual Defendants, Lance Chatkin, Bruce Adelstein, Ryan Chatkin, Von Argyle, and David Chatkin, formed an enterprise through the guise of two corporate entities, General Purpose Steel, Inc. and Worldwide Steel Unlimited, Inc., and then knowingly engaged in a pattern of selling steel to the Plaintiffs and others at inflated prices based on fraudulent certificates of conformance and mill test reports, transmitted via mail and wire. Specifically, the Plaintiffs allege that David Chatkin, Ryan Chatkin, and Von Argyle "exercised control over General Purpose, participating in the operation and management of its affairs" and "exercised management control over Worldwide, participating in the operation and management of its affairs." (Doc. 56, at 12).

General Purpose purchased surplus steel from mills that did not meet desired specifications, and the mills did not provide General Purpose with mill tests to show the industry standards, grades, and strength of the steel. (Doc. 56, at 23). Worldwide would then buy the steel from General Purpose and sell it to customers, like the Plaintiffs. *Id*. The Plaintiffs allege that the Defendants participated in a fraudulent enterprise: once a customer, like the Plaintiffs would submit a purchase order to Worldwide, a Worldwide employee would email or fax the customer sales information to General Purpose, and then David Chatkin, Ryan Chatkin, Lance Chatkin, or Von Argyle would decide whether to accept the sale and release steel to the customer. If they accepted the sale, then General Purpose would transfer the steel to Worldwide who would transmit a fraudulent certificate of conformance to the customer, including the Plaintiffs and others, via e-mail or mail and with physical delivery of the steel to locations across the country.

(Doc. 56, at 27). In the steel industry, certificates of conformance certify to the purchaser that "the steel is as represented and that the vendor is in possession of either a mill test report or independent testing data to support the vendor's representations as to the standard, grade and chemical and physical properties of the steel." (Doc. 56, at 21).

In September 2009, Richard Kuny, a Worldwide salesman, began preparing certificates of conformance to accompany the steel purchased by the Plaintiffs from Worldwide. (Doc. 56, at 25). The Plaintiffs assert that these certificates were false and that "Mr. Kuny was instructed by [Defendant Bruce] Adelstein and others to fill in the certificates of conformance so that the physical and chemical properties shown met the customer's specifications, regardless of the steel's actual properties." (Doc. 56, at 25). The Plaintiffs allege that "Mr. Kuny was instructed, whether directly or indirectly, by Bruce Adelstein, David Chatkin, Lance Chatkin, Ryan Chatkin, and Von Argyle to prepare a certificate of conformance containing information that met O'Neal's or Leeco's specifications and matched the fraudulently assigned standard and grade." (Doc. 56, at 26-27).

The Plaintiffs assert that Mr. Kuny was provided with computer "menus" to prepare false certificates of conformance at Von Argyle's behest. (Doc. 56, at 27). Allegedly, Mr. Kuny complained to at least some of the Defendants about being forced to falsify certificates of conformance and specifically informed Ryan Chatkin that he sometimes had to completely generate the test reports without any information about the steel to rely on. (Doc. 56, at 28). The Plaintiffs allege that Ryan Chatkin, David Chatkin, and Von Argyle all "knew that they, through General Purpose and Worldwide, were representing steel as meeting a particular [industry] standard grade when it did not." (Doc. 56, at 29). The individual Defendants received the

purchase orders from customers that included desired grades of steel and then ultimately filled those purchase orders with steel that did not meet those qualifications and fraudulently issued certificates of conformance in compliance with the purchase orders. (Doc. 56, at 29-30).

The Plaintiffs allege that because of the small size of the two corporate Defendants and the level of control and personal involvement in the enterprise as a whole, the individual Defendants all were fully aware that Worldwide was buying one type of steel from General Purpose and then selling it through Worldwide as an entirely different standard and grade of steel. (Doc. 56, at 30). The Plaintiffs allege that David Chatkin, General Purpose Steel, Inc.'s founder and chairman met with the other individual Defendants to form Worldwide Steel Unlimited, Inc. and "orchestrated the organization of Worlwide and General Purpose, and . . . exercised management control over the enterprise through the two corporate entities." (Doc. 56, at 10). Specifically, the Plaintiffs allege that David Chatkin received sales reports on a daily, weekly, and monthly basis and financial reports on a monthly and yearly basis, all of which reflected the fraudulent transactions. (Doc. 56, at 13).

The Plaintiffs allege that Ryan Chatkin, General Purpose's Secretary and Executive Vice President of Products & Logistics, participated in the fraudulent enterprise by "making decisions regarding Worldwide's operation." (Doc. 56, at 12). The Plaintiffs allege that Von Argyle, Chief Financial Officer of both General Purpose and Worldwide, generated "financial reports, sales reports, accounts receivable reports, and any other documents related to the financial operations of each company" and provided financial reports to the individual Defendants involved in the enterprise. (Doc. 56, at 12).

In March 2010, the Plaintiffs discovered that the steel they purchased from the

Defendants was not of the quality assured on the certificates of conformance issued by the Defendants. (Doc. 56, at 35). The Plaintiffs allege that in March or early April of 2010, after the Plaintiffs communicated with the Defendants about the non-conforming steel, Lance Chatkin, David Chatkin, and Bruce Adelstein met in Florida to "discuss how to avoid the looming consequences of their liability as a result of the fraudulent steel provided to O'Neal and Leeco." (Doc. 56, at 46). Ultimately approximately 60% of steel tested by O'Neal and 40% of steel tested by Leeco that was provided by the Defendants failed to meet the specifications represented by Worldwide on the certificates of conformance it provided to the Plaintiffs. (Doc. 56, at 47). In the Amended Complaint, the Plaintiffs list specific dated purchase orders that failed to meet the specifications in Worldwide's certificates of conformance. (Doc. 56, at 48-54).

    B.    <u>Procedural History</u>

On January 14, 2011, the Plaintiffs filed a complaint against Bruce Adelstein, Lance Chatkin, General Purpose, and Worldwide. (Doc. 1). Almost exactly two years later, the Plaintiffs filed an Amended Complaint adding Ryan Chatkin, Von Argyle, and David Chatkin as defendants. (Doc. 56). The Amended Complaint contains nine counts. Count I alleges that the Defendants violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c) and § 1962(c). The Plaintiffs allege that David Chatkin and Ryan Chatkin violated RICO by "knowingly and directly or indirectly condut[ing] the racketeering activities through the enterprise by directly or indirectly sending, or approving the sending of, fraudulent representations through the mail or by wire to Plaitiffs and directing Rich Kuny and others, through the enterprise's chain of command to do so." (Doc. 56, at 67). The Plaintiffs allege that Von Argyle violated RICO in the same regard as the Chatkins but also generated "a false mill test

report template being fully aware that such template would be used to create representations of actual mill test reports and be sent across interstate lines via wire or mail." (Doc. 56, at 67-68).

Count II alleges that the Defendants committed a RICO conspiracy under 18 U.S.C. § 1962(d) by agreeing to and directing the "racketeering activity of mail and wire fraud . . . conducted by the association-in-fact enterprise." (Doc. 56, at 70). Count III alleges fraudulent misrepresentation against the Defendants who did not file a motion to dismiss. Count IV alleges negligence and/or wantonness against all of the Defendants, and Count V alleges civil conspiracy against all of the Defendants. Count VI for breach of contract; Count VII for breach of express warranty; and Count VII for breach of implied warranties are alleged only against the corporate defendants. Count IX seeks a declaratory judgment requiring all of the Defendants to indemnify and hold harmless the Plaintiffs for sums paid to defend and settle claims brought by the Plaintiffs' customers as a result of the Plaintiffs sale of the non-conforming steel to its customers.

David Chatkin, Ryan Chatkin, and Von Argyle now move to dismiss counts IV, V, and IX against them and seek a more definite statements of counts I and II against them.[1] Worldwide, General Purpose, Lance Chatkin, and Bruce Adelstein have not filed motions to dismiss at this time.

III.   LEGAL DISCUSSION

    A.   Counts I & II: RICO violations

The Plaintiffs allege two claims for relief under 18 U.S.C. § 1964(c), which allows any person injured by a violation of RICO, 18 U.S.C. § 1962, to bring a civil suit in District Court to

---

[1] David Chatkin initially moved to dismiss counts I and II but withdrew that motion to dismiss in his Reply brief. (Doc. 78).

seek relief. Section 1962(c) makes it illegal for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c)

"Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity. . . . To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007) (citing FED.R.CIV.P. 9(b); *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380-81 (11th Cir.1997)).

The Plaintiffs allege that the Defendants were engaged in an enterprise through the two corporate Defendants that conducted racketeering activity "through a pattern of sending fraudulent certificates of conformance and mill tests reports concerning the steel they sold through mail and wire causing injury to the property and business of Plaintiffs." (Doc. 56, at 62). The Plaintiffs allege that the Defendants fraudulently manufactured mill test reports and certificates of conformance and then sent those reports and certificates via wire and mail to the Plaintiffs, satisfying the first element. The Plaintiffs also allege that they relied on these reports and certificates and warranties made about the steel in the reports and certificates in selling the steel to its customers, satisfying the third element. The Plaintiffs allege that the Defendants gained a significant profit from selling the surplus steel at an inflated price to the Plaintiffs based

7

on the fraudulent reports and certificates, satisfying the fourth element. The Defendants do not contest that the Plaintiffs sufficiently alleged these three elements.[2] The real issue is whether the Plaintiffs have sufficiently alleged the time, place, and person responsible for the alleged fraudulent actions so as to hold David Chatkin, Ryan Chatkin, and Von Argyle liable for RICO violations.

The Defendants do not specifically argue that the Plaintiffs have failed to allege the time and place of the misleading statements, presumably because the Plaintiffs have included in their Amended Complaint specific purchase order dates in a chart of their orders that were filled with non-conforming steel. (*See* Doc. 56, at 48-54). Ryan Chatkin, David Chatkin, and Von Argyle do argue, however, that the Plaintiffs have failed to allege individual instances of misrepresentation or participation in the enterprise's racketeering activity against them. When alleging a RICO claim against several defendants, "the complaint should inform *each* defendant of the nature of his alleged participation in the fraud." *Brooks*, 116 F.3d at 1381 (emphasis added). The complaint must contain "statements of individual wrongs by individual defendants." *Cruz v. Cinram Intern., Inc.*, 574 F. Supp. 2d 1227, 1233 (N.D. Ala. 2008).

In over fifty pages of factual allegations, which are briefly summarized above, the Plaintiffs specifically describe several instances of each individual Defendant engaging in fraudulent activity or overseeing fraudulent activity, and do not simply lump the Defendants together as a group. The court will not repeat what has already been laid out above in the

---

[2] Defendant David Chatkin argues that the Plaintiffs have not properly segregated their claims and pled the amount of damages that each plaintiff claims to have sustained. (Doc. 60, at 12). As stated in this court's previous order on David Chatkin's motion to compel, "the court finds that the Plaintiffs' categorization of damages is sufficient at this time." (Doc. 88, at 2).

statement of facts nor will it cite to every instance of individual conduct alleged by the Plaintiffs against David Chatkin, Ryan Chatkin, and Von Argyle. Suffice it to say the court is able to "determine which Defendant(s) allegedly participated in which acts complained of" and the Defendants are put on sufficient notice of the precise claims against them because the Amended Complaint specifically describes part each the individual Defendants played in the allegedly fraudulent enterprise. *See Cruz*, 574 F. Supp. 2d at 1233.

To be held liable under § 1962(c), a defendant must have "*some* part in directing the enterprise's affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 180 (1993) (emphasis in original). "[L]iability is not limited to those with primary responsibility for the enterprise's affairs . . . [and] is not limited to those with a formal position in the enterprise." *Id.* As the Plaintiffs pointed out in the Response Brief, it is enough to allege that an individual Defendant knew or reasonably could foresee that the fraudulent documents were produced and would be mailed or transmitted via wire to the Plaintiffs with the purpose of defrauding them. The Plaintiffs have clearly alleged that the Defendants developed and maintained a business scheme wherein the individual Defendants either directly participated in, knew, or at least reasonably should have known that the certificates and reports Mr. Kuny was fraudulently producing would be sent via mail or wire to the Plaintiffs so that the Plaintiffs would rely on them in selling the steel to their customers.

The court agrees with the Supreme Court's interpretation of § 1962(c) in that "Congress did not intend to extend RICO liability under § 1962(c) beyond those who participate in the operation or management of an enterprise through a pattern of racketeering activity." However, the court cannot accept the Defendants' argument that General Purpose's chairman, David Chatkin; General Purpose's Secretary and Executive Vice President of Products and Logistics,

Ryan Chatkin; and General Purpose and Worldwide's CFO, Von Argyle; did not have "*some* part in directing the enterprise's affairs" so that knowledge of the fraudulent activity cannot be attributed to them. *Reves*, 507 U.S. at180 (emphasis in original). The Plaintiffs have sufficiently stated a claim for a RICO violation under 1962(c), and the court will DENY the Defendant's motion for more definite statement of Count I.

Section 1962(d) makes it illegal for any person to conspire to violate any subsection of 18 U.S.C. § 1962. 18 U.S.C. § 1962(d). "The touchstone of liability is an agreement to participate in a RICO conspiracy, which may be shown in two ways: (1) showing an agreement on the overall objective of the conspiracy, or (2) showing that a defendant agreed to commit personally two predicate acts, thereby agreeing to participate in a 'single objective.'" *U.S. v. Browne*, 505 F.3d 1229, 1264 (11th Cir. 2007) (quoting *U.S. v. Abbell,* 271 F.3d 1286, 1299 (11th Cir. 2001)). Additionally:

> If the [plaintiff] can prove an agreement on an overall objective, it need not prove a defendant personally agreed to commit two predicate acts. . . . In the absence of direct evidence of an agreement on an overall objective, the [plaintiff] may prove such an agreement through inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme, . . . amounting to evidence that each defendant necessarily must have known that the others were also conspiring to participate in the same enterprise through a pattern of racketeering.

*Browne,* 505 F.3d at 1264 (internal quotation marks and citation omitted).

The Plaintiffs have alleged that all three individual Defendants who filed motions to dismiss controlled the financial affairs of the enterprise and participated in the formation and direction of both Worldwide and General Purpose so that they were directly involved in or at the very least had knowledge of the enterprise's overall objective of fabricating documents to sell

non-conforming steel at inflated prices. The Plaintiffs' Amended Complaint is sufficient to state a claim for a RICO conspiracy under § 1964(c) and § 1962(d), and the court will DENY the Defendants' motion for more definite statement of Count II.

    B.    <u>Count IV: Negligence and/ or Wantonness</u>

The Defendants argue that both the Plaintiffs' claims for negligence and wantonness are barred by the 2-year statute of limitations. The Plaintiffs acknowledge that a two year statute of limitations applies to their negligence claim but do not argue that their negligence claim is timely within that statute of limitations. Therefore, the court will GRANT the Defendants' motion to dismiss and DISMISS WITH PREJUDICE the Plaintiffs' claims of negligence against the Defendants. (Doc. 68, at 11 n. 6). *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (finding that a party's failure to brief and argue an issue before the district court is grounds for declaring it abandoned).

To support their argument that the wantonness claim should also be dismissed as time barred, the Defendants cite *Ex Parte Capstone Building Corp.*, 96 So. 2d 77,79 (Ala. 2012) ("We hereby . . . confirm that claims of wantonness are subject to the two-year statute of limitations found in Ala. Code 1975, § 6-2-38(l)."). The Alabama Supreme Court, however, clarified that its holding would only apply prospectively from the date of its decision— June 3, 2011: "[W]e adhere to our conclusion that it would be unjust to announce a decision that applied retroactively so as to immediately cut off the right to bring suit upon any claim that had accrued more than two years prior to our original decision and that would not provide a reasonable transition to the rule announced then and affirmed today." *Id.* at 93.

Any claim of wantonness accruing before June 3, 2011 is not time-barred if filed within

11

two years of the *Capstone* decision, or by June 3, 2013, "unless and to the extent that the time for filing their action under the six year limitations period . . . would expire sooner." *Id.* at 91. The acts supporting the Plaintiffs' claims occurred in 2009 and 2010, and thus their claims fall into the former category whose statute of limitations will expire on June 3, 2013. The Plaintiffs filed their original Complaint in January 2011, well within the statute of limitations period. The Defendants argue that the Plaintiffs' Amended Complaint does not relate back to the time of the filing of the original Complaint, but the relation back of the Amended Complaint is irrelevant on this point because the Plaintiffs filed their Amended Complaint on January 15, 2013, within the statute of limitations period that will expire on June 3, 2013. Under *Capstone Building Corp.*, the Plaintiffs can maintain their claims for wantonness, and the court will DENY the Defendants' motion to dismiss the Plaintiffs' wantonness claim.

    C.    Count V: Civil Conspiracy

The Defendants argue that the Plaintiffs' state law civil conspiracy claim is time-barred or, alternatively, fails to state a claim upon which relief can be granted. "Under Alabama law, civil conspiracy is not an independent action; rather, a plaintiff must have a viable underlying cause of action." *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1294 (11th Cir. 2001) (citing *Drill Parts & Service Co. v. Joy Mfg. Co.*, 619 So. 2d 1280, 1289 (Ala. 1993)). Because a civil conspiracy claim is dependent on an underlying claim of misconduct, the statute of limitations on the conspiracy claim expires at the same time as the statute of limitations on the underlying misconduct. *Boyce v. Cassese*, 941 So. 2d 932, 944 (Ala. 2006) (citing *Kelly v. Alexander*, 554 So. 2d 343, 344 (Ala.1989); *Ford Motor Co. v. Neese*, 572 So. 2d 1255 (Ala.1990)). Because the court has already ruled that the Plaintiffs' underlying wantonness claim is timely, the civil

conspiracy claim is also timely.

"Civil conspiracy is a combination of two or more persons to accomplish an unlawful end (by civil law standards) or to accomplish a lawful end by unlawful means. . . .  By its very nature, the existence of a conspiracy must often be inferred from circumstantial evidence and the relationship of the parties, as opposed to direct evidence." *Edison v. Olin Corp.*, 527 So. 2d 1283, 1285 (Ala. 1988) (citations omitted).  In this case, the Plaintiffs allege that the Defendants underlying wanton conducts also supports its claim of civil conspiracy. The Alabama Supreme Court has defined wantonness as "the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (citing *Bozeman v. Central Bank of the South*, 646 So. 2d 601 (Ala.1994)). The Plaintiffs have not attacked the sufficiency of the Plaintiffs' claim for wantonness, and thus the court will not analyze it here.

The Plaintiffs pled in great detail the elaborate enterprise created by the Defendants to falsify mill test reports and certificates of conformance to "sell inferior, untested product as substantially better and more expensive product, meeting exacting [industry] specifications, thus illiciting profits for its participants." (Doc. 56, at 55). The whole of the Plaintiffs' Amended Complaint paints a portrait of the individual Defendants all working in concert to create an enterprise that misled and defrauded its customers; the very specific factual averments about the individual Defendants and the enterprise they created certainly comply with the pleading requirements for both the underlying claim of wantonness and the claim of civil conspiracy.

David Chatkin argues that Rule 9(b)'s heightened pleading standard applies to the

Plaintiffs' claim of civil conspiracy, but provides no authority for this argument. (Doc. 60, at 10). By its very terms, Rule 9(b) only applies to claims of fraud and mistake. *See* Fed. R. Civ. P. 9(b). The Plaintiffs' claim for civil conspiracy is not one for fraud, nor is the claim underlying the civil conspiracy for fraud; thus, rule 9(b)'s heightened pleading requirements do not apply. Because the Plaintiffs have sufficiently alleged a claim for civil conspiracy and because that claim is not time-barred, the court will DENY the Defendants' motion to dismiss Count V of the Amended Complaint.

### D.   Count IX: Declaratory Judgment

The Defendants argue that the Plaintiffs' request for a declaratory judgment from this court is not appropriate because the court cannot issue advisory opinions. For a declaratory judgment claim to be justiciable, it must be "definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41 (1937).  Further, the case "must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.*  For this court to have jurisdiction to issue a declaratory judgment, the Plaintiffs "must assert a reasonable expectation that the injury they have suffered will continue or will be repeated in the future." *Malowney v. Fed. Collection Dep. Group,* 193 F.3d 1342, 1347 (11th Cir. 1999) (citing *Emory v. Peeler*, 756 F.2d 1547, 1551-52 (11th Cir. 1985)). "The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments." *Malowney*, 193 F.3d at 1347.

In this case, a dispute between adverse parties exists because the Plaintiffs claim

violations of federal statute and state common law along with their request for a declaratory judgment. The dispute between the Plaintiffs and the Defendants is concrete and not abstract; the Plaintiffs claim that the Defendants' violation of the law has injured them financially in the past and will potentially harmfully affect them in the future. The Plaintiffs specifically allege that the Defendants actions have already forced them to resolve claims with some of their customers over the non-conforming steel and that they "may be exposed to liability by virtue of other non-conforming steel that may be incorporated into end products of other customers to an extent not yet known." (Doc. 56, at 80). Taking all of the Plaintiffs' allegations as true, the Defendants sold the Plaintiffs non-conforming steel, which the Plaintiffs then sold to their customers. Some customers have already brought claims for the non-conforming steel.  These facts alone create more than a "remote possibility" of future claims against the Plaintiffs; it is reasonable to expect that the Plaintiffs will be held liable for other claims in the future because of the Defendants supplying non-conforming steel to the Plaintiffs. *See Malowney*, 193 F.3d at 1347.

Because the Plaintiffs have sufficiently plead a reasonable expectation of future harm arising directly from the Defendants' allegedly wrongful conduct, the court will DENY the motion to dismiss count XI of the Plaintiffs' Amended Complaint.

IV.     CONCLUSION

The court finds that even under Rule 9(b)'s heightened pleading standards, the Plaintiffs' RICO claims as contained in the Amended Complaint against the Defendants are sufficient to apprise the Defendants of the claims made against them. Although the statute of limitations on the Plaintiffs' claim for negligence has run, the Plaintiffs' claims for wantonness and civil conspiracy are not time-barred, and the Plaintiffs have sufficiently pled both of those claims.

Finally, the Plaintiffs' request for a declaratory judgment on indemnity from future claims from its customers is ripe for judicial review. For the following reasons, the court will GRANT IN PART and DENY IN PART the motions to dismiss filed by David Chatkin, Ryan Chatkin, and Von Argyle. The court will enter an order simultaneously to that effect.

DONE and ORDERED this 8th day of May, 2013.

*Karon O. Bowdre*
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE